FÉLIX JIMÉNEZ, Petitioner, *v.* DISTRICT COURT OF BAYAMÓN, Respondent.

No. 29. Argued March 12, 1945.—Decided May 21, 1945.

*Dubón & Ochoteco* for petitioner. *Samuel R. Quiñones* for intervéners, defendants in the main action.

MR. JUSTICE SNYDER delivered the opinion of the court.

On September 22, 1943 nine plaintiffs filed suit pursuant to Act No. 10, Laws of Puerto Rico, 1917 (vol. II, p. 216), for unpaid wages totaling $15,834.43, against their employer Félix Jiménez who operated a dairy farm. The defendant appealed to the district court from the judgment of the municipal court in favor of the plaintiffs. The district court, after making drastic reductions in the amounts

awarded to the plaintiff, entered judgment in favor, of seven of the plaintiffs. The claims herein involve agricultural wages; the instant case is therefore not appealable to this court. However, as this case involved two important questions of law which may arise frequently in suits by employees for unpaid wages, we granted certiorari under Act No. 32, Laws of Puerto Rico, 1943 (p. 84).

The first of these two questions involves the award by the lower court of attorney's fees in the amount of $150. Section 14 of Act No. 10 of 1917 provides that "no costs shall accrue in this class of suits". The plaintiffs contend that the inhibition of § 14 does not apply to attorney's fees, on the ground that Act No. 94, Laws of Puerto Rico, 1937 (Laws of 1936–37, p. 229) in amending § 327 of the Code of Civil Procedure, put attorney's fees in a paragraph of its own and classified them as something other than costs.

We do not stop to examine this contention, for the reason that the Legislature, in prohibiting any award for costs, used that word as it was understood in 1917. And there can be no doubt that at that time costs included attorney's fees (§ 327, Code of Civil Procedure, 1933 ed.). We add that we find nothing in Act No. 94 of 1937—the statute amending the *general* law as to costs—which would enable us to say that Act No. 94 has *by implication* modified or repealed the *special* and specific provision of § 14 of Act No. 10 of 1917 regarding costs in wage suits filed under Act No. 10. (See 1 Sutherland, Statutory Construction, 3d ed., § 2021, p. 486; *People* v. *Nieto et al.*, 64 P.R.R. 840; *Home Owners' Loan Corporation* v. *Creed*, 108 F.(2d) 153, 155 (C.C.A. 5th, 1939).) The Legislature showed that it understood this to be the law when it recently amended § 14 of Act No. 10 of 1917 by adding the following paragraph: "In all cases where a judgment is rendered in favor of the plaintiff, if he appears represented by a private attorney, the attorney's fees shall be assessed against the defendant." (Act No. 17, Laws of

Puerto Rico, 1945.) We therefore hold that the district court had no authority to award attorney's fees to the plaintiffs.

■ The second important question of law which impelled us to grant certiorari herein involves prescription. Section 1867 of the Civil Code, after providing for a three-year statute of limitations for suits by employees for unpaid wages, states that the "time for the prescription . . . . shall be counted from the time the respective services have ceased to be rendered". Under that Section, if an employee leaves the service of his employer, remains away for a period of time without explanation and then returns to his job, does this temporary cessation of services start the statute of limitations running for any claim for services rendered prior to the date the employee temporarily ceased to render services?

We pointed out in *Muñoz* v. *District Court,* 63 P.R.R. 226, 234, that the statute "can have only one meaning, that prescription herein began to run from November 18, 1940, on which date the workman ceased to render the services which he had rendered uninterruptedly to his employer from June 20, 1936". We used the word "uninterruptedly" advisedly in stating the rule. We are not to be understood as holding that every interruption of service starts the running of the statute for prior services. The petitioner concedes that "a mere absence from work for a limited number of days by the worker, with proof furnished by the latter as to the cause of the absence" would not constitute the cessation of services contemplated by the statute. Such things as brief illness of the employee, breakdown of machinery or temporary lack of work would not accomplish that result. Here we need only hold that when a plaintiff leaves his employment in a year-round industry [1] for months or years and no explanation thereof is vouch-safed, he ceases at that

---

[1] Whether the rule enunciated herein applies to seasonal industries is not involved in this case, and we expressly leave it open.

time to render services to his employer within the meaning of § 1867.

The fact that he may and does return to the same employer to perform the same work under the same arrangement is immaterial. When he breaks off the old arrangement, the statute by its very terms begins to run as to all previous services. As we pointed in the *Muñoz* case on rehearing (p. 235), the statute in its practical operations is already highly unreasonable. We shall not make it more so by distorting its plain provisions to hold that a permanent year-round employee who leaves his post for years has not ceased rendering services to his employer merely because some years later he is rehired by the same employer.[2]

The district court found as a fact that over a period of years frequent interruptions occurred in the work of three of the plaintiffs—Ricardo Ramos, Serapio Correa, and Manuel Filomeno.[3] In making these findings, the lower court accepted the payrolls of the petitioner for this purpose and re-

---

[2] Although Sánchez Román, *Estudios de Derecho Civil*, vol. 4, p. 468; *Enciclopedia Jurídica Española*, vol. 25, p. 462; *Sentencia de 9 de julio de 1928, Sentencia de 6 de mayo de 1929, Sentencia de 16 de mayo de 1929, Sentencia de 11 de enero de 1929*, of the Supreme Court of Spain; and *Sentencia Núm. 99 de 2 de diciembre de 1905*, of the Supreme Court of Cuba, discuss the Spanish and Cuban equivalents of § 1867 of our Civil Code, they shed no light on the specific problem before us.

[3] The finding was that they worked as follows:

Ricardo Ramos—From January 2, 1937, to January 9, 1937; from January 17, 1937, to April 10, 1937; from May 2 to June 12, 1937; from June 20 to July 17, 1937; from January 30, 1938, to June 18, 1938; from July 24, 1938, to November 9, 1940; from November 17, 1940, to December 31, 1940; from January 12, 1941, to May 4, 1941; from May 18, 1941, to August 24, 1941; from September 1, 1941, to September 7, 1941; from November 2, 1941, to November 9, 1941; from January 1, 1942, to March 9, 1942; from March 10, 1942, to July 31, 1942; from August 1, 1942, to August 31, 1942; and from September 1, 1942, to December 31, 1942.

Serapio Correa—From January 10, 1937, to January 17, 1937; from February 1, 1937, to March 13, 1937; from April 25, 1937, to May 23, 1937; from July 18, 1937, to December 31, 1937; from January 1, 1938, to March 5, 1938; from July 24, 1938, to August 14, 1938; from October 1, 1938, to February 3, 1939; from November 26, 1940, to February 28, 1941; from November 16, 1941, to January 28, 1942; from January 29, 1942, to March

jected the testimony of these three employees denying the said interruptions.[4] However, despite these findings of fact, the district court granted judgment in favor of these plaintiffs in the amounts of $927.88, $397.52, and $677.03, respectively, without making any reference to the question of prescription as applied to them.[5] But in the face of the lower court's own findings of fact, we cannot permit the judgment for these plaintiffs to stand.

As to Ramos, we need not concern ourselves with any of the interruptions of services prior to July 17, 1937. He left the employment of the petitioner on that date and did not return to work until January 30, 1938—a period of more than six months. In the absence of any explanation of this prolonged period of unemployment, the fact that more than three years from July 17, 1937, elapsed without a suit therefor bars all the claims of Ramos for services prior to that date. As to his claim for services from January 30, 1938 to November 9, 1940, we cannot find that it is barred, as the

---

9, 1942; from March 9, 1942, to May 15, 1942; from June 24, 1942, to July 4, 1942; and from September 14, 1942, to December 31, 1942.

Manuel Filomeno—From January 11, 1937, to May 15, 1937; from May 16, 1937, to December 31, 1937; from January 1, 1938, to June 30, 1938; from June 30, 1938, to April 6, 1940; from September 7, 1940, to September 13, 1940; and from December 8, 1940, to December 31, 1940.

[4] The lower court said in its opinion: "We have decided this case by using the payrolls produced by the employer in his answer *as to the periods of time during which the employees worked* and the wages earned during said periods of time, as we believe that the information of the owner as to the terms of the contract and the wages received is always superior to the incoherent information workers are accustomed to give on this point." (Italics ours).

[5] We are unable to explain the failure of the lower court to discuss this question, in view of the facts (1) that it found that the claim of one plaintiff had completely prescribed, and (2) that it applied this very principle to plaintiff Juan Carmona, finding that he worked for one period until December 31, 1938, the claim for which was barred by the time the complaint herein was filed on September 22, 1943. The lower court went on to state that "The employee worked once more for the employer from February 2, 1942 until December 31, 1942, and his claim as to this second period has not prescribed." We note in passing that the entire claim of Carmona fails for a different reason, as hereinafter noted.

only interruption thereof was from June 18 to July 24, 1938; and he testified that he was sick for some weeks.

In the case of Correa, all claims for services prior to February 3, 1939 are barred, since he left his employment on February 3, 1939, did not return to work for twenty-two months, and offered no explanation thereof. Similarly, Filomeno cannot recover on any claim for work done prior to September 13, 1940, since he quit work on that date for an unexplained period of approximately three months.

■ There remain for consideration two objections raised by the plaintiffs against invoking prescription here under § 1867. The first is that in his answer the petitioner pleaded the one-year statute of limitation found in § 1868 of the Civil Code, whereas § 128 of the Code of Civil Procedure provides that "In pleading the statute of limitations, it is not necessary to state the facts showing the defense, but it may be stated generally that the cause of action is barred by the provisions of law (giving the number of the section and subdivision thereof, if so divided, relied upon) . . ."

We recognize the force of the argument of the plaintiffs that, as a matter of pleading, either the facts as such or the provision of law relied on must be pleaded, and that since the defendant did neither here, the defense of statute of limitations was not properly pleaded (Cf. *Orta* v. *Arzuaga et al.*, 23 P.R.R. 241). But something more occurred in this case. The very first pronouncement made by counsel for the defendant at the trial was that he would object to any testimony as to claims for work performed more than *three* years prior to suit. Such objections were consistently made throughout the trial based on the three-year statute embodied in § 1867 of the Civil Code. And the testimony of the defendant was directed to that end. Moreover, the plaintiffs made no objection during the trial while such testimony was being adduced. We therefore are of the view that the pleadings on that particular question must be considered

as amended to conform to the proof. This is particularly true in a wage case, since the Legislature has enjoined us in Act No. 10 of 1917, as amended, to relax the strict rules of pleading in wage cases.

The second point the plaintiffs make against invoking prescription here is that pursuant to § 1873 of the Civil Code [6] prescription was interrupted herein by "extrajudicial claims" made by the employees to the petitioner for their unpaid wages. Assuming that § 1873 applies to claims of this type, we find no satisfactory evidence in the record of any precise and specific claims by these three plaintiffs to the petitioner. The testimony of plaintiffs other than Ramos, Correa, and Filomeno as to their own alleged claims cannot aid these three. Correa said he had made claims, without specifying the dates or nature thereof. And Ramos and Filomeno simply testified in a general way that they claimed *double* pay for extra hours when they were paid on Saturdays, and that the petitioner always replied that they would get such double pay when the law provided therefore. As we shall see, the district court did not believe the testimony of the employees as to the verbal contract for double pay; rather, it believed that the said contract between the parties was for ordinary pay for hours worked more than eight hours. Presumably, it likewise did not believe that a claim for wages, not provided for by the contract, was nevertheless made by the plaintiffs. And the lower court made no finding that any such extra-judicial claims were made. We are therefore unable in this state of the record to hold that extra-judicial claims sufficient to toll the statute were made by these three plaintiffs.

On the merits of the case, the district judge found as facts that some plaintiffs worked eleven hours a day, and that others worked ten hours. He also found that a

---

[6] That Section reads as follows: "Prescription of actions is interrupted by their institution before the courts, by extrajudicial claim of the creditor, and by any act of acknowledgment of the debt by the debtor."

verbal contract existed between the plantiffs and their employer whereby they would work six days a week for eight hours a day for a stipulated weekly sum. He therefore held that they were entitled to double pay for the ninth hour and ordinary pay for subsequent hours calculated at an hourly rate obtained by dividing the weekly sum by forty-eight. In coming to these conclusions, the district court did not, as we have seen, believe the testimony of the employees that double compensation was to be paid for work beyond the eighth hour; it also concluded that they were exagerating in testifying that they had worked thirteen hours a day.

There was a square conflict in this testimony. The employer asserts that the employees were hired to work eight hours a day, which was all they worked, except occasionally when work was slowed up due to rain or the absence of some workers. His payrolls do not aid us on this question. They show only the days worked and the amounts paid. They are silent on the number of hours worked. The plaintiffs, on the other hand, all testified insistently and consistently as to extra work. Although, as already noted, the district judge did not believe parts of their testimony, he did find that they performed some extra work beyond eight hours which was not included within their contract for an eight-hour day and six-day week and for which they were therefore entitled to payment at their ordinary rate of hourly pay (*Cardona* v. *District Court*, 62 P.R.R. 59; *Succession of Serrallés* v. *District Court*, 64 P.R.R. 474; *Avellanet* v. *Porto Rican Express*, 64 P.R.R. 660). As there is some support in the record for this finding, we are not at liberty to interfere with it, particularly where the case is here not by appeal but by certiorari under Act No. 32 of 1943. In view of what we have said, *Torres* v. *González*, 63 P.R.R. 925, and *Muñoz* v. *District Court*, 63 P.R.R. 226, are distinguishable. The *Torres* case involved an ordinary appeal; the *Muñoz* case came here on certiorari under Act No. 32, but there was no

44

support in the record for the judgment, requiring us to vacate it as a matter of law.

■ The last point made by the petitioner is that a number of the plaintiffs signed releases for the claims herein. These alleged releases were signed on Christmas Eve by illiterate workmen. They received amounts ranging from 5 to 23, for claims totalling $15,834.43. Although his opinion is not so clear as it might be on this question, the district judge seems to have believed the testimony of the workmen that they were told these checks were in lieu of the usual Christmas party; that no question of claims for back wages were discussed at that time; and that they were asked to sign some papers which the petitioner told them he needed for the government. While there is also some discussion in the opinion as to the alleged insufficiency of the consideration for the contract of accord and satisfaction, we are satisfied that these were the findings of the district court. Here again we respect its findings in view of the support thereof contained in the record. We therefore never reach the question of whether such releases for unpaid wages may be properly executed in this jurisdiction and under what circumstances (Cf. *Brooklyn Savings Bank* v. *O' Neill*, 324 U. S. 697, decided April 9, 1945, involving releases of claims for wages admittedly due under the specific provisions of the Fair Labor Standards Act, which is a minimum wage statute).

■ During the trial at the close of the testimony of Juan Carmona the district court dismissed the complaint on the merits as to Carmona because of the total lack of proof of his claim. This was done without hearing any testimony of the defendant thereon. Nevertheless, after the case as a whole was taken under advisement by the district judge, he entered judgment herein in favor of Carmona for work allegedly done during 1942. Counsel for the plaintiffs concedes here that the said judgment for Carmona must be set aside. We deem it our duty to state that the action of the

district court in entering judgment for Carmona under these circumstances is not to be commended.

For the reasons stated herein, the case will be remanded to the district court with instructions to modify the judgment by (1) eliminating the provision for attorney's fees; (2) entering judgment for the defendant as to the claim of Juan Carmona; and (3) restricting the judgment for Ricardo Ramos, Serapio Correa, and Manuel Filomeno for work done by them subsequent to January 30, 1938, November 26, 1940, and December 8, 1940, respectively.